NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-3416

———


UNITED STATES OF AMERICA

v.

LILIAN MUNOZ,
                                        Appellant


———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-08-cr-00156-002)
District Judge: Hon. Joseph A. Greenaway, Jr.

———


Submitted Under Third Circuit LAR 34.1(a)
June 29, 2010

Before:  SLOVITER, BARRY and HARDIMAN, Circuit Judges

(Filed: June 30, 2010)

———


OPINION

SLOVITER, Circuit Judge.

Lilian Munoz ("Lilian"), who pled guilty to conspiracy to commit money laundering contrary to 18 U.S.C. § 1956(a)(1)(B)(i) in violation of 18 U.S.C. § 1956(h) challenges the District Court's application of the Sentencing Guidelines to her sentence.

**I.**

In May 2007, Immigration and Customs Enforcement ("ICE") agents observed Lilian and her husband Everado Antonio Munoz ("Everado") as they exited their apartment building in Weehawken, New Jersey. The ICE agents approached the couple, and obtained consent to search the large black duffle bag that Everado was carrying. Inside was $390,010 in cash wrapped in rubber bands. The agents found another $378,550 in cash but "very little clothing, food or furniture" in their apartment, Presentence Investigation Report ("PSR") at ¶ 11, and in Lilian's purse $5,057 in cash wrapped in white napkins, a notebook that appeared to contain records of money laundering transactions, and a cell phone.

Everado later told interviewers of the probation office that he was recruited to launder money while visiting Colombia the previous year, that he believed the money was potential drug money, and that he had been expecting a call on the cell phone found in Lilian's purse from the individual to whom he was supposed to deliver the money in Queens, New York. Everado also claimed that his wife knew nothing of his activities.

Lilian told her interviewers of the probation office that she was accompanying her

2

husband but asserted that she did not know what her husband was doing and, when asked what she thought he was doing meeting people "in parking lots and giving them bags, she smiled and shrugged her shoulders and gave no response." PSR at ¶ 22. Although she was asked that same question several times, she refused to answer. Lilian also told her interviewers that her husband had given her the cell phone the day that ICE intercepted them, and that she knew nothing more about it. "At [that] time," the phone began to ring with a call from the same phone number that was written on a post-it note found inside Lilian's address book next to a "code . . . for the delivery of the cash and the location in Queens." PSR at ¶ 23.

Lilian and Everado were indicted for conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and both pled guilty. Lilian's plea agreement specifically noted that at sentencing she would contest: (1) whether her guidelines calculation should be enhanced by six levels because she knew that the laundered money was intended to promote the narcotics trade, *see* U.S.S.G. § 2S1.1(b)(1); and, (2) whether she merited a two level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. At sentencing, the District Court applied the six level enhancement of § 2S1.1(b)(1), but declined to apply § 3E1.1 to decrease her offense level for acceptance of responsibility. After reviewing the factors referred to in 18 U.S.C. § 3553(a), the District Court sentenced both Everado, who unlike Lilian had benefitted from a three level reduction for acceptance of responsibility, and Lilian to seventy months of imprisonment. For Lilian, that sentence

was twenty seven months under the lowest recommended guidelines sentence.

## II.

Lilian's principal argument regarding the six level enhancement for laundering narcotics-related money under § 2S1.1(b)(1) is that the language of her plea colloquy, in which she admitted that at some point in time she learned "that the source of the funds was from the sale of narcotics," App. at A23, was insufficient to support the enhancement. She asserts that § 2S1.1(b)(1) requires such knowledge at the time the money was laundered. However, the District Court applied the enhancement not only because Lilian had "said yes at the plea allocution to knowing [that the] currency was from the proceeds of some form of illegal activity," but also because of the "attending circumstances . . . ." App. at A48. Those circumstances included the large sums of money involved, Everado's admission "during his post-arrest statement" that he knew that the money was from drug sales, Lilian's possession of the ledger, the cell phone, and the post-it note, and the government's plausible assertion that the facts that the Munoz's apartment was sparsely furnished and the rent was paid for in cash are "indicative of laundering money from narcotics sales." PSR at ¶ 29. The District Court's conclusion was not clear error. *See United States v. Carr*, 25 F.3d 1194, 1210 (3d Cir. 1994) (reviewing district court's three level enhancement under U.S.S.G. § 2S1.1(b)(1) "only for clear error").

We turn to Lilian's challenge to the District Court's denial of the two point

reduction for acceptance of responsibility. U.S.S.G. § 3E1.1 states, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." The comments to that guideline further explain that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility[.]" U.S.S.G. § 3E1.1 cmt. n.1(a). The District Court found that Lilian's statements to the probation office that she accompanied her husband but did not know what he was doing showed a lack of acceptance of responsibility in someone who had pled guilty to conspiracy to launder money. Indeed, her statements before the probation office flatly contradicted those made during her plea colloquy, at which Lilian answered "yes" when asked both "Did you understand that the currency you received was the proceeds of some form of unlawful activity?" and "Did you understand that the purpose of deliveries of currency was to conceal and disguise the nature, location, source, ownership and control of the funds?" App. at A23.

Although Lilian was apparently without counsel at the time she spoke with the probation officer, she did not claim that she misunderstood the questions posed, and, although given the opportunity, she did not attempt to clarify her answers during the sentencing hearing.[1] *See United States v. Singh*, 923 F.2d 1039, 1041-43 (3d Cir. 1991)

---

[1] Moreover, the District Court disbelieved Lilian's statements that she did not know that the money was connected to drugs.

(no clear error when district court denied acceptance of responsibility credit for comments made during uncounseled interview with probation and before defendant plead guilty to offense). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," U.S.S.G. § 3E1.1 cmt. n.5 and we again find no clear error in the District Court's decision. *United States v. Lessner*, 498 F.3d 185, 201 (3d Cir. 2007).

Finally, Lilian can only raise her claim for ineffective assistance of counsel on collateral review under 28 U.S.C. § 2254 as "[t]his is not a case [w]here the record is sufficient to allow determination of ineffective assistance of counsel[.]" *United States v. Olfano*, 503 F.3d 240, 247 (3d Cir. 2007) (internal citation and quotation omitted). It remains uncertain why counsel allegedly failed to perform certain duties, or whether those failures prejudiced Lilian in any way.

**III.**

For the above stated reasons, we will affirm the District Court's judgment of sentence.